**ULTRAMED, INC., Plaintiff,**

v.

**BEIERSDORF–JOBST, INC., Defendant.**

No. 96–1555.

United States District Court, M.D. Pennsylvania.

June 24, 1998.

Joseph P. Giovannini, Jr., Kingston, PA, for plaintiff.

Joseph Uhl–Metz, Paul J. Killion, Harrisburg, PA, for defendant.

### MEMORANDUM and ORDER

NEALON, District Judge.

In this diversity action, plaintiff Ultramed, Inc., (Ultramed) has filed a complaint against defendant, Beiersdorf–Jobst, Inc. (Jobst) alleging breach of contract, breach of express warranty, breach of implied warranty, fraud in the inducement, and indemnification. Plaintiff seeks to be compensated for 2.1 million dollars which it claims it had to pay to the United States Government because it overbilled Medi-

care in the sale of Jobst Extremity System 7500 pumps based on the representations of Jobst that the pumps qualified for a higher reimbursable rate of $4,500.00 under Code EO 652 whereas, in fact, they qualified for a lower rate of $1,500.00 for each. Defendant has filed a motion for summary judgment which has been fully briefed and is before the court for determination.

### Background

The facts that appear to be undisputed, reveal that the Defendant Jobst manufactured lymphedema pumps which are mechanical devices that are attached to a person's extremity in order to massage and push extra fluid from the extremity back into the body. Ultramed is engaged in the business of selling medical equipment and, beginning in July of 1992, purchased Jobst pumps which were then sold to Medicare recipients allegedly on the representation by Jobst that they qualified for the $4,500.00 reimbursement. Apparently, a pump system with gradient segmental compression, which inflates its various portions in turn along its length, qualified for the EO 652 reimbursement of $4,500.00, while a pump that inflated as a whole evenly along it's length was reimbursable at the rate of $1,500.00 under an EO 651 designation. In November of 1992, the Health Care Financing Administration (HCFA) ruled that the Jobst Model 7500 could not be billed under EO 652 but should be billed under EO 651. In July, 1993, a Qui Tam action was filed against Ultramed in the United States District Court for the Western District of Wisconsin captioned *United States of America—Ex rel. Keith & Visauer v. Curative Technologies, Inc., d/b/a Ultramed, Inc., et al.*, in which damages, including a civil penalty, were sought for alleged improper billing by Ultramed under the False Claims Act. On October 18, 1994, Ultramed signed a Settlement Agreement under which it paid 2.1 million dollars to

the Government and the case was dismissed. This lawsuit followed.

The issues raised by Jobst in support of its motion for summary judgment are:

1. By failing to give notice to Jobst prior to settling with the government, Ultramed waived its claim for indemnity;

2. By signing a settlement agreement that included claims unrelated to the Jobst pump, Ultramed waived its claim for indemnity;

3. By failing to obtain a joint tortfeasor release from the government, Ultramed forfeited its claim; and

4. The complaint fails to state a cause of action.

### Discussion

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court outlined the proper interpretation of Rule 56(c):

Under Rule 56(c), summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment "as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case to which she has the burden of proof.

*Celotex,* 477 at 322–23, 106 S.Ct. 2548. "Any credible evidence contrary to the moving party's version of events will defeat the summary judgment motion." *Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, 908 (3rd Cir.1984). In light of that standard, the court will now review the defendant's motion.

### I. *Failure to Give Notice*

 Initially, there is a factual dispute as to the type of notice, if any, that Jobst received from Ultramed. In their respective briefs, Ultramed states that notice of the lawsuit, but not of the settlement, was sent to Jobst while Jobst denies having notice of either the lawsuit or the settlement agreement. Nevertheless, under Pennsylvania case law, the failure to give notice of the litigation, or the settlement, is not fatal and does not constitute a waiver of Ultramed's right to pursue its indemnity claim. The Pennsylvania Superior Court in *Martinique Shoes Inc. v. New York Progressive Wood Heel Company,* 207 Pa.Super. 404, 217 A.2d 781 (1966), ruled that, if no notice is given, an indemnitee has the burden of justifying the payment of damages by offering against the indemnitor in a second action practically the same evidence relied on to establish the case against the indemnitee in the first action, as well as the reasonableness of the settlement. In the second action, where the indemnitor received no notice of the initial action or the settlement, the indemnitor is entitled to challenge the facts which resulted in the settlement. *Ridgeway Court, Inc. v. James J. Canavan Insurance Associates, Inc., et al.,* 348 Pa.Super. 136, 501 A.2d 684 (1985). Consequently, if no notice was received, defendant will have the opportunity to dispute the need to settle as well as the amount paid. *Daily Express, Inc. v. Northern Neck Transfer Corp.,* 490 F.Supp. 1304 (M.D.Pa.1980) does not hold that an indemnitee's claim is waived if notice is not given to the indemnitor as

defendant contends. *Daily Express* merely identifies the difference in proof between an express and implied contract of indemnity in a subsequent action by the indemnitee against the indemnitor where the indemnitee has settled the initial action. The absence of notice was not at issue. Furthermore, neither *Consolidated Rail Corp. v. Youngstown Steel Door Co.,* 695 F.Supp. 1577 (E.D.Pa.1988) nor *Neville Chemical Co. v. Union Carbide Corporation,* 422 F.2d 1205 (3d Cir.1970), held that failure to notify the indemnitor of the litigation or the settlement constituted a waiver of a claim for indemnity.

## II. *Release of Unrelated Claims*

Defendant argues that it is entitled to judgment because the release between the government and Ultramed included items other than defendant's product, which precludes plaintiff from seeking contribution from defendant.

In response, plaintiff maintains that it is not seeking contribution but is requesting full payment from defendant on the ground that the settlement payment to the government was made solely because of defendant's misrepresentations concerning billing under EO 652. In effect, it is attempting to shift the entire loss to Jobst maintaining that such shifting is available to those who are secondarily or vicariously liable from those who are primarily liable. *Svetz v. Land Tool Company, et al.,* 355 Pa.Super. 230, 513 A.2d 403 (1986). Additionally, according to plaintiff, while the Release mentions other products, this language is surplusage as the only product involved in the settlement was the Jobst pump and other items were referred to merely as a precautionary move to include all products listed in the complaint. If so, there is a factual question as to the real intent of the government and the plaintiff in executing the Release.

1. Indemnity is merely one of the causes of

## III. *Joint Tortfeasors' Release*

Defendant's argument on this issue is directed to plaintiff's alleged right to contribution where a joint tortfeasors' release does not comply with the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S.A. § 8324, *et seq.* Inasmuch as plaintiff does not refer to defendant as a joint tortfeasor, but as the entity solely responsible, and does not seek contribution, this argument fails.

## IV. *Failure to State a Claim*

■ Defendant's principal point here is that the evidence of record establishes as a matter of law that the written and oral communications from Jobst to Ultramed do not suggest, or encourage, submission of invoices for reimbursement under Code EO 652 but constitute more of a disclaimer to such submissions.

Plaintiff, on the other hand, contends that the July 8, 1992, letter from Angelo R. Periera, Director of Quality Assurance and Regulatory Affairs for defendant, expressly represented that the Extremity Pump System 7500 was reimbursable by the Government under EO 652. Additionally, plaintiff insists that defendant's employees gave verbal encouragement to file under EO 652. Also, according to plaintiff, the defendant received notice on November 15, 1992, that the pump didn't qualify under EO 652 but did not inform plaintiff until March 4, 1993, after it had sold all its pumps for which reimbursement was denied.

Plaintiff's indemnity claim [1] relies on Restatement (second) of Torts 886B(2)(c)-

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

action alleged by plaintiff.

(2) Instances in which indemnity is granted under this principle include the following:

. . . . .

(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied.

Of course, it is plaintiff's position that it relied on defendant's misrepresentation when it submitted its invoices to defendant. Moreover, that the reason it purchased the pumps was because of the higher reimbursement.

The Periera letter does not establish a disclaimer as a matter of law but may be subject to different interpretations. The same can be said of the oral statements by defendant's employees. Therefore, factual disputes exist on this issue which must be resolved by a jury.

Finally, the interpretation of the 1989 letter received by Jobst from a Medicare intermediary in Dallas, Texas, and the legal consequence thereof, cannot be considered dispositive based on the present record. Similarly, the existence and effect of a verification by Ultramed in the submission of HCFA 1500 Forms likewise present factual questions.

After considering all of the arguments advanced by defendant, the motion for summary judgment is denied.